## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| TRADEMARK PROPERTIES, INC., a South Carolina corporation; RICHARD C. DAVIS, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 2:06-cv-2195-CWH |
| vs. | ) ) | |
| A&E TELEVISION NETWORKS, and MAX WEISSMAN PRODUCTIONS, INC. d/b/a DEPARTURE FILMS, | ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |
| A&E TELEVISION NETWORKS, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| vs. | ) ) | |
| TRADEMARK PROPERTIES, INC., and RICHARD C. DAVIS, | ) ) ) | |
| Counterclaim Defendants. | ) ) | |

The plaintiffs, Trademark Properties, Inc. and Richard C. Davis, have brought this contract case against the defendant, A&E Television Networks ("A&E"). This matter comes before the Court on the defendants' motion in limine (# 98) to exclude the testimony of the plaintiffs' damages expert, Mark Halloran.

### Mr. Halloran's Expert Witness Report Dated December 14, 2007

The plaintiffs contend that A&E owes them 50% of the net revenues that A&E has earned from the television show "Flip This House." A&E has produced its revenue and expense

numbers associated with the show, and the plaintiffs' expert witness, Mark Halloran, has accepted those numbers as true.  Mr. Halloran stated during his deposition:  "I didn't take an audit of their statement of revenue and expenses but just accepted them to be true."  Halloran Tr. 127:3-14.  Mr. Halloran's "Expert Witness Report," dated December 14, 2007, used the revenue and expense numbers provided by A&E to the plaintiffs.  Halloran Tr. 118:18-24; 126:24-127:2; 128:6-128:13 (admitting that he used A&E's numbers).  Mr. Halloran described his method for calculating the alleged damages as "very simple" or "quite simple."  Id. at 127:18; 127:25; 128:2-3; 129:4; 142:13.  He testified that he subtracted expenses from revenues, and then he divided the remainder by two, based on the testimony by plaintiff Richard C. Davis that he had a 50/50 agreement with A&E.  Id. at 128:6-23.  Mr. Halloran explained:  "Since this is just revenue, I mean, I can tell you right now I can take a calculator and add this up and split it in half and that would be an additional amount due Mr. Davis."  Halloran Tr. 142: 18-21.  As a threshold matter, under Federal Rule of Evidence 401, Mr. Halloran's testimony does not provide "relevant evidence."  His testimony is not necessary to prove how to divide in half a sum that is not disputed by the parties.

 Mr. Halloran's expert witness report dated December 14, 2007 contains only one opinion:  the calculation of 50% of net revenues.  The Federal Rules of Evidence provide the Court with the power to determine any "preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence . . . ."  Fed.R.Evid. 104(a).  In determining the admissibility of expert testimony, the Court relies on Federal Rule of Evidence 702, which authorizes the admission of expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]"  "Although expert testimony is

generally presumed helpful to the jury, we have held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors." Persinger v. Norfolk & Western Railway Co., 920 F.2d 1185, 1188 (4th Cir. 1990), citing Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986).

Mr. Halloran's expert witness report and deposition testimony simply state what is well within common knowledge of the jurors: how to divide a sum by two. Mr. Halloran's testimony is of no assistance to the jury, and therefore is not necessary, and shall be excluded from the trial in this case.

### Mr. Halloran's Supplemental Expert Witness Reports
### Dated October 9, 2008 and October 20, 2008

In response to the Court's oral order issued at the hearing on October 16, 2008, the plaintiffs submitted Mr. Halloran's "Supplemental Expert Witness Report," dated October 20, 2008, which explains the research and methodology he used to make the conclusions set forth in his expert report dated October 9, 2008, which was produced to the defendants on October 10, 2008. Mr. Halloran's research consisted of relying on a graphic from the *New York Times* which listed a number of television shows on Home & Garden Television ("HGTV") and other networks.[1] Mr. Halloran then used the Internet to research the number of "seasons" each of those shows ran and added other "Home Sale/Improvement Based Reality Shows" to his list. Mr. Halloran eliminated from his list all shows that had run for fewer than four seasons, calculated the average number of seasons that the other shows ran, and used that number to

---

[1] The list of television shows included shows about buying and selling houses, as well as shows about antiques (Antiques Roadshow) and gardening (The Victory Garden).

project the number of seasons that "Flip This House" would run.

>Rule 702 of the Federal Rules of Evidence provides:
>
>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Leaving aside the question whether Mr. Halloran possesses the requisite "knowledge, skill, experience, training, or education" in the subject area in which he intends to testify, Fed.R.Evid. 702, the testimony will not be admissible if its underlying methodology does not satisfy Rule 702.  See, e.g., Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (upholding the trial court's finding that the expert's qualifications were sufficient, but his methodology was unreliable).  Courts interpret Rule 702 as requiring trial judges to act as gatekeepers; the trial court must determine whether the expert's proffered opinion is reliable and the opinion is relevant to the facts at issue.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591-92, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  There are four Daubert factors to guide a court's determination of reliability, which is a flexible inquiry tailored to the specific facts and opinions before the court.  The four factors are: (1) whether the expert's theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the methodology's known or potential rate of error; and (4) the method's or conclusion's acceptance within the relevant community.  Daubert, 509 U.S. at 593-94.

Mr. Halloran based his supplemental expert opinion on damages on an article in the *New York Times* and on information revealed by various Internet searches.[2] There is no evidence that his methodology has been tested, no evidence that his methodology has been subjected to peer review and publication, no evidence regarding his methodology's known or potential rate of error, and no information regarding the acceptance of his methodology within the relevant community. His methodology does not satisfy any of the four Daubert factors, and therefore the conclusions based on that methodology are not reliable.

### Whether Mr. Halloran's report is timely

Lastly, Mr. Halloran's supplemental expert report, submitted by the plaintiffs on October 10, 2008, is not timely, as it was submitted after the January 18, 2008 deadline set forth in the Court's second amended scheduling order, filed November 27, 2007. (# 70)

For the foregoing reasons, it is ordered that the defendants' motion in limine (# 98) be granted, and that Mr. Halloran's testimony be excluded from the trial in this case.

**AND IT IS SO ORDERED.**

*C. Weston Houck*

**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

October 28, 2008
Charleston, South Carolina

---

[2] The accuracy and reliability of information from the Internet is highly questionable.